IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Michael W. Ogborne, D.D.S.,                                       Case No. 3:04CV7231

        Plaintiff,

v.                                                                                        ORDER

UNUM Life Insurance Company of America,

        Defendant.

This is an insurance contract case. Dr. Michael Ogborne seeks a declaratory judgment that he is totally disabled and brings an action against UNUM Life Insurance Company of America (UNUM) alleging breach of contract and bad faith denial of insurance claims. Jurisdiction exists under 28 U.S.C. § 1332.

Pending are counter-motions for summary judgment. For the following reasons, Ogborne's motion shall be granted in part and denied in part and UNUM's motion shall be granted in part and denied in part.

**Background**

Ogborne is a general dentist. He purchased three disability insurance policies, designated as LA N509528, LA N510126, LU N159530 (the policies), from UNUM in 1970.

On June 18, 2001, Ogborne was involved in a car accident and injured his right hand.

Two days later, Dr. Peter Evans, determined Ogborne had sustained a radial collateral ligament injury to his right-index finger that would be "slow-healing." Ogborne visited Dr. Evans for several treatments thereafter.

Two years later, Ogborne's hand still had not healed and he went to another doctor for a diagnosis. On June 17, 2003, Dr. James Nappi determined Ogborne's injury was limiting his hand function by twenty percent of the normal hand function. At this time, Ogborne was told for the first time that his injury was permanent.

Ogborne notified UNUM of claims under his three disability policies in September, 2003. After investigating the claims, UNUM denied Ogborne's claims as untimely and found his injury did not render him totally disabled under the policies. Thereafter, Ogborne filed this lawsuit.

## Discussion

### I. Ogborne Provided UNUM With Reasonable Notice of the Claims

In support of its determination that Ogborne's claims were untimely, UNUM contends Ogborne failed to comply with the policies' strict notice of claim provisions because he failed, as provided in the policies, to provide notice within the time required by the policies.

The relevant policies provided that "[w]ritten notice of claim must be given to the Company within twenty [thirty days under Policy 126] days after the occurrence or commencement of any loss covered by this policy, or as soon thereafter as is reasonably possible." (Policies 528 and 530).

Ohio law requires a two-step approach to "late notice" cases. First, a court must determine whether notice was provided "within a reasonable time in light of all the surrounding facts and circumstances." *Ferrando v. Auto-Owners Mutual Ins. Co.*, 98 Ohio St. 3d 186, 208 (2002) (internal quotation omitted); *see also Clark v. Chubb Group of Ins. Cos.*, 337 F.3d 687, 692 (6th Cir. 2003). If the plaintiff failed to provide notice within a reasonable time, there is a presumption of prejudice to the insurer, which the plaintiff has the burden of rebutting. *Fernando*, 98 Ohio St. 3d at 208; *Clark*, 337 F.3d at 693.

2

UNUM argues an exception to *Fernando* is applicable because the policies' contained a specific time limit for the insured to provide notice. It relies on *Torello v. Unum Life Ins. Co.*, 201 F.3d 441 (6th Cir. 1999) (unpublished disposition), to argue that if a policy contains a specific time limit, the court need not determine whether the insurer suffered prejudice and should rather adhere strictly to the policy language. Because the policies had specific time limits for notice, UNUM asserts that, under *Torello*, this court must uphold its determination of untimeliness of notice.

In *Torello*, the notice provision provided: "Written notice of claim must be given to the Company within 30 days of the date disability starts, if that is possible. If that is not possible the Company must be notified as soon as reasonably possible to do so." *Id*. at *3. The Sixth Circuit held that "Ohio law as construed by this court, does not suggest that prejudice has any significance as to whether an insurer may enforce a specific time limit set forth in an insurance policy." *Id*. at *6.

Ogborne responds that he provided notice to UNUM within a reasonable time period after discovering his finger was permanently injured. He states that he believed until June, 2003, that his injury was curable and would not permanently affect the performance of his profession. Finally, he argues that the policy language in *Torello* differs from the provisions in the policies in this case.

I agree. The policies in this case provide an alternative to the twenty or thirty day time period for notice. Ogborne's policies provide that an insured may give notice "as soon thereafter as reasonably possible." Thus, the broader language in Ogborne's notice provisions distinguishes his policies from the policy in *Torello*. Accordingly, the general approach under Ohio law is applicable. *Ferrando*, 98 Ohio St. 3d at 208.

Ogborne provided notice to UNUM within three months of the diagnosis of permanent injury. Considering the circumstances surrounding Ogborne's injury, he provided notice to UNUM

3

within a reasonable time after he discovered his hand injury was a permanent disability. Having found Ogborne provided reasonable notice, under Ohio law no prejudice will be presumed. *Id*. Ogborne points out, however, his good faith delay - caused by his waiting for the injury to heal - did not prejudice UNUM's ability to process his claim. Thus, Ogborne provided reasonable notice and his policies' late notice provisions will not bar his disability claim.[1]

## II. Ogborne Is Entitled to Coverage

At issue in this case is the policies' language that defines "totally disabled" as "the inability of the Insured to perform the duties of his regular occupation."

UNUM argues Ogborne is not entitled to disability benefits under the policies because he is not totally disabled. It contends Ogborne remains able to perform the duties of a general dentist which include, *inter alia*, general dentistry, fillings, and crowns. UNUM further points out that Ogborne admits he "works the same hours and makes more money than he did before the accident."

UNUM contends the policies' definition of total disability requires the insured to show he is unable to perform a plurality of duties. UNUM asserts that Ogborne's inability to perform two types of procedures does not meet this plurality requirement.

UNUM further argues that the residual disability rider attached to Policy 528 also supports its position that Ogborne does not qualify for total disability insurance. It points out that Policy 528's residual disability rider defines residual disability as the "inability of the Insured to perform one or

---

[1] To hold otherwise would be to penalize insureds who anticipate, seek, and desire in good faith to resume their occupations. It is appropriate to permit an insured to wait until all hope of doing so first appears lost, instead of demanding that he or she provide notice as doubts begin to arise and uncertainty increases. The interests of neither the insured nor the company would be served by a legal standard that would encourage potentially premature claims. This is particularly so in cases in which no reasonable likelihood of prejudice is apparent.

more, but not all of the material and substantial duties of his regular occupation . . ." (Policy 528 Residual Disability Benefit Rider). UNUM, relying on *Helus v. Equitable Life Assurance Soc'y of the U.S.*, 309 F. Supp. 2d 1170 (N.D. Cal. 2004), contends that the residual disability rider mandates that this court construe the meaning of total disability as the inability to do all duties. UNUM asserts that if Ogborne could be totally disabled by the inability to perform two procedures, the residual disability rider is rendered meaningless.

Ogborne responds that UNUM broadly drafted the definition of total disability in the policies. The policies define "totally disabled" as "the inability of the Insured to perform the duties of his regular occupation." He points out Ogborne and UNUM entered into these policies in the 1970's and that later UNUM policies define total disability in much more narrow terms. Ogborne contends he is totally disabled if an injury renders him unable to perform more than one of the duties of his occupation.

Ogborne argues, moreover, that Policy 528's language expressly prohibits any provision within the residual disability rider from limiting the definition of total disability under the policies. Policy 528 states, *inter alia,* "While this policy is maintained in force, and before the age 65 anniversary, the Company cannot cancel the policy, increase the premiums in the Policy Schedule, reduce the benefits because of change to a more hazardous occupation or place any restrictive rider thereon."

Finally, Ogborne asserts that UNUM is attempting to inject additional requirements into the policy. He contends UNUM's demands for proof of the procedures he performed before and after the accident as a condition under the policies constitutes a wrongful rewriting of the policy. *See Pelchat v. UNUM Life Ins. Co. of America*, 2003 WL 21105075, *11 (N.D. Ohio).

Ogborne is correct. UNUM's reliance on *Helus v. Equitable Life Assurance Soc'y of the U.S.*, 309 F. Supp. 2d 1170 (N.D. Cal. 2004), is misplaced. In *Helus*, the court determined the language of the policy did not prohibit the court from using the rider to interpret the definition of total disability under the main policy. *Id*. at 1178. In this case, Ogborne's policy with UNUM plainly states that a "restricted rider" cannot be placed on the policy. Thus, I find *Helus* distinguishable form this case.

The policies define total disability as the "the inability of the Insured to perform the duties of his regular occupation." This definition is susceptible to two different, yet reasonable, interpretations: namely, that the insured is totally disabled if he cannot perform either more than one of his pre-injury duties or all such duties.

Policy language susceptible to two reasonable interpretations is, as a matter of law, ambiguous. *St. Marys Foundry, Inc. v. Employers Ins. of Wausau*, 332 F.3d 989, 992 (6th Cir. 2003). Ambiguous language in an insurance contract is interpreted strictly against the insurer. *Andersen v. Highland House Co.*, 93 Ohio St. 3d 547, 550 (2001); *St. Marys Foundry, Inc.*, 332 F.3d at 993. To defeat coverage in the face of a claim of ambiguity, "the insurer must establish not merely that the policy is capable of the construction it favors, but rather that such an interpretation is the only one that can fairly be placed on the language in question." *Andersen*, 93 Ohio St. 3d at 549 (internal citation omitted).

In this case, UNUM did not qualify or limit the scope of its chosen term "duties," which is plural. Later policies contained such limitation, which shows the company could have restricted the scope of its coverage to loss of the ability to perform material, substantial duties or all duties.

In light of the ambiguous language in the policies, Ogborne's interpretation of the policies' definitions of total disability as the inability to perform more than one of the duties of dentistry is reasonable.

Accordingly, under Ohio law, Ogborne's interpretation will be applied to the ambiguous language. Therefore, Ogborne is entitled to coverage if he shows he is unable to perform more than of the duties he could perform before the injury.

Ogborne presents evidence he is unable to perform several of the duties of his occupation that he could perform before the accident. He presents evidence that after his injury he became unable to perform root canals, periodontal work, including root scaling, and is severely limited in the type of extractions he can perform.

Both parties submit different descriptions of a general dentist's occupational duties. UNUM contends O*NET provides the proper description, while Ogborne argues this court should use the "Occupational Description" located in UNUM's claim file. Regardless of whatever occupational definition of general dentistry I apply, however, the outcome is the same. Ogborne presents evidence that he is unable to perform more than one of the duties of a general dentist under either definition that he was able to perform before the injury, which is enough to satisfy the policies' definition of total disability.

Therefore, Ogborne is entitled to total disability coverage under the policies.

### III. UNUM Did Not Act in Bad Faith

Finally, Ogborne alleges UNUM denied his claim in bad faith. Specifically, Ogborne argues UNUM was not reasonably justified in refusing to pay disability benefits under any of the policies.

7

He contends UNUM acted unreasonably in investigating the claim and lacked a necessary understanding of the duties of a general dentist.

An insurer denies a claim in bad faith when it fails to provide a reasonable justification for denying a claim. *Zoppo v. Homestead Ins. Co.*, 71 Ohio St. 3d 552, 554 (1994). Intent is not an element of the reasonable justification standard. *Id*. at 555.

UNUM provides evidence of its justification for denying the claims: 1) it believed Ogborne claims were untimely; and 2) it interpreted the policies in a different manner than Ogborne. It provides evidence supporting its assertions.

Ogborne provides evidence that UNUM's claim adjuster was unfamiliar with the duties of general dentistry. He, however, provides no evidence that UNUM's interpretation of the ambiguous language in the policies was an unreasonable justification for denying coverage.

Therefore, no genuine issue of material fact supports a conclusion that UNUM acted without reasonable justification and summary judgment is warranted.

## Conclusion

For the foregoing reasons, it is therefore,

ORDERED THAT

1. UNUM's motion for summary judgment be, and the same hereby is granted on Ogborne's bad faith claim and denied on all other claims; and

2. Ogborne's counter-motion for summary judgment be, and the same hereby is granted on the breach of contract claims and denied on all other claims.

So ordered.

/s/ James G. Carr
James G. Carr

                                                                    Chief Judge